UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROY LEN NEFF,

                Petitioner,

v.

WASHINGTON STATE
DEPARTMENT OF CORRECTIONS,

                Respondent.

Case No. C09-5098BHS/JRC

REPORT AND
RECOMMENDATION

**NOTED FOR:
July 31, 2009**

This habeas corpus action, filed pursuant to 28 U. S.C. 2254, has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636 (b)(1)(B) and Local Magistrate Judge's Rules MJR 3 and MJR 4. Petitioner is seeking federal habeas relief, pursuant to 28 U.S.C. § 2254, from a state conviction for one count of manufacture of a controlled substance with a firearm enhancement (Dkt. # 13, Exhibit 1). Petitioner was convicted by bench trial on stipulated facts. He was sentenced to 89 months for manufacture of a controlled substance with a 36 month firearm enhancement for a total of 125 months. (Dkt. # 13, Exhibit 4). <u>See</u> <u>also</u>, <u>State v. Neff</u>, 163 Wn.2d 453, 456-58, 181 P.3d 819 (2008).

## FACTS

The Washington State Supreme Court summarized the facts as follows:

REPORT AND
RECOMMENDATION - 1

Pierce County Sheriff Deputy James Jones responded to an unrelated suspicious vehicle call on the afternoon of November 20, 2002. While en route, he smelled a pungent ammonia odor. Aware that ammonia is hazardous, he stopped and investigated. He spoke with Neff's neighbor, who pointed to Neff's house as the probable source of the smell.

Deputy Jones drove through an open gate and up the driveway to Neff's house. As he got out of his car, Neff appeared from behind the house and spoke with Deputy Jones. Neff said he smelled the ammonia too and offered to help find the source. The two began walking around the property.

Walking toward the unattached garage, Deputy Jones noticed a bug sprayer that was missing its pump top. Several signs indicated it had been used to manufacture methamphetamine: there was a mist coming from it and approximately four inches of a yellow-blue liquid was inside over what appeared to be rock salt. A burn pile containing numerous pseudoephedrine pill blister packets lay next to the sprayer. Deputy Jones knew that these pills were a primary ingredient in methamphetamine manufacture.

Neff noticed Deputy Jones observing these items, and he walked the other way. Neff did not get far, as another arriving deputy brought him back to the scene. As the second officer put him in a squad car, Neff tossed a set of keys under Deputy Jones' car. Another deputy retrieved the keys and used the keys to open the garage, thinking the ammonia smell was coming from inside.

In the garage, the officers saw what appeared to be a methamphetamine manufacturing laboratory and a marijuana growing operation. One officer then asked a judge for a search warrant, which he received and the officers executed. [court's footnote 1. While Neff unsuccessfully moved to suppress the evidence in the garage at the Court of Appeals, that motion is not before us.]

Besides the drug operations, the officers found three handguns in the garage. The first two, a loaded Smith and Wesson .357 and a loaded Colt .45, were found in a locked safe under a desk on the garage's north wall. They found the third, a loaded Davis model P.380, in a tool belt hanging from the garage rafters. They also found two surveillance cameras covering the yard and serpentine driveway, which an officer testified were for countersurveillance. Inside the garage was a monitor on which the feed from the cameras could be viewed.

Pierce County prosecutors charged Neff with six felony counts and five firearm enhancements. The case proceeded for trial to a jury. After voir dire, Neff and the prosecutor's office reached a deal. The prosecutor agreed to drop all the charges, save for one charge of manufacturing methamphetamine and a firearm enhancement for committing the crime while armed. In return, Neff submitted to a stipulated facts trial, a procedural device where a judge finds facts based on police reports and the other documents.

On November 25, 2003, Neff signed a document titled "Stipulation to Facts Sufficient and Stipulated Bench Trial." The stipulation stated the evidence was sufficient to "support a possible conviction," Clerk's Papers (CP) at 99, and "there is sufficient evidence to support the charged offense and the firearm enhancement." CP at 100. It was stipulated the judge would read the police and forensic reports and the evidence from a previous hearing, and based on only those documents, would decide whether Neff was guilty.

The stipulation contained a section waiving "the following Constitutional rights: the right to a speedy . . . trial . . .; the right to remain silent . . .; the right at trial to hear and question witnesses who testify against me; [and] the right at trial to testify. . . ." CP at 100-01. Two sections later, it waived "the right to challenge the sufficiency of the evidence to support these convictions on appeal, . . . ." CP at 101.

When Neff submitted the stipulation, the trial judge, who also presided over the suppression hearing, asked Neff several questions about it.

"What's your understanding of this document?" the judge asked. 3 Report of Proceedings (RP) (Nov. 25, 2003) at 220. "That I'm making a plea deal with the prosecutor." *Id*. "Well, that's part of it," the judge responded. *Id*. Neff's attorney then explained, "[S]ometimes these things can be complicated, so if Mr. Neff is not able to accurately answer your question, I can certainly explain it, . . . ." *Id*. at 221.

Despite Neff's admitted misunderstanding of the stipulation, the judge accepted the stipulation. *Id*. at 229.

After the bench trial, the judge found Neff guilty of unlawfully manufacturing methamphetamine. He also found him guilty of being armed while manufacturing, holding that the guns in the garage were readily available to use. He sentenced Neff to 89 months for manufacturing methamphetamine and added 36 months for the firearm enhancement, for a total of 125 months. CP at 120-28.

(Dkt. # 13, Exhibit 4).

## PROCEDURAL HISTORY

Petitioner appealed his sentence and conviction to the Washington State Court of Appeals. The court remanded for additional findings of fact regarding the search of Neff's garage, (Dkt # 13, Exhibit 7). Additional facts were found and the parties submitted supplemental briefing. The Washington State Court of Appeals then affirmed the conviction and

REPORT AND
RECOMMENDATION - 3

sentence (Dkt # 13, Exhibit 11). Petitioner sought review by the Washington State Supreme Court and he presented the following issues:

> 1. Where there is an agreement to submit a case for a stipulated facts trial and the prosecution has included in that agreement language indicating a waiver of the right to appeal the conviction based upon insufficiency of the evidence, does that language convert the agreement to something more akin to a guilty plea and must the protections afforded those who enter a plea be extended to the defendant to ensure that he was knowingly, voluntarily and intelligently waiving his due process right to be free from conviction upon less than sufficient evidence?
>
> Further, was counsel ineffective where he 1) had his client enter into such a confusing, hybrid agreement even though it was clear there was insufficient evidence to support the firearm enhancement; 2) failed to provide the court with any support for his sufficiency argument although ample case law exists and 3) failed to present such case law after the court invited him to when the court admitted it was unaware of the law on the topic and that law would have compelled dismissal of the enhancement?
>
> 2. In State v. Valdobinos, 122 Wn.2d 270. 282-84, 858 P.2d 199 (1993), this Court held that a person is not "armed" for the purposes of committing a drug offense in a house simply because a weapon is found in that house; there must be evidence that the weapon was "accessible and readily available for offensive or defensive purposes." More recently, in State v. Schelin, 147 Wn.2d 562, 55 P.3d 632 (2002), this Court further clarified that a person is only "armed" for an offense if there is a nexus not only between the gun and the defendant but also the gun and the crime, so that mere presence of a gun in the house where marijuana "grow" operation or possession of drugs is occurring is not sufficient to show that the defendant was "armed" for those crimes. And in State v. Gurske, 155 Wn.2d 134, 138, 118 P.3d 333 (2005), this Court reaffirmed Valdobinos and Schelin and again held that mere proximity or constructive possession was insufficient to support a firearm enhancement.
>
> In this case, the court of appeals upheld imposition of a firearm enhancement for a conviction for methamphetamine manufacturing where the firearms were found in [the] garage in which manufacturing was occurring. Two guns were in a locked safe in the floor under a desk, and another gun was in a tool belt hanging from the rafters and there was no evidence whether it could have been reached at any point or was simply too high. Should review be granted under RAP 13.4(b)(1) because the decision in this case is in conflict with Gurske, Valdobinos and Schelin?

REPORT AND
RECOMMENDATION - 4

1           Further, should review be granted under RAP 13.4(b)(2) because the decision in this case conflicts with the holding, in State v. Johnson, 94 Wn. App. 882, 896-96, 974 P.2d 855 (1999), review denied, 139 Wn.2d 1028 (2000), that mere presence of a weapon even in the same home where there is illegal activity is not enough to prove a defendant was "armed" during that activity?

    3.     The court of appeals held that the defendant must have been armed with guns in the garage despite those guns being in a locked safe in the floor under a desk or up in the rafters and not proven to be reached, because manufacturing takes time so there must have been some time when appellant was in the garage manufacturing at the same time the guns were there. Should review be granted under RAP 13.4(b)(3) and (4) to address this improper presumption of being "armed" based upon mere proximity?

(Dkt. # 13, Exhibit 12). The Washington State Supreme Court granted review (Dkt. # 13, Exhibit 13). After receiving briefing from the parties the Washington State Supreme Court affirmed the conviction and sentence. State v. Neff, 163 Wn.2d 453, 456-58, 181 P.3d 819 (Wash 2008). Petitioner moved for reconsideration and that motion was denied (Dkt. # 13, Exhibit 17 and 18).

Petitioner then filed the federal Habeas Corpus petition that is now before this court. He raises the following grounds for review:

    1.     Warrantless search.

    2.     Unjust firearm enhancement.

(Dkt. # 4, pages 6 and 7).

## EVIDENTIARY HEARING

If a habeas applicant has failed to develop the factual basis for a claim in state court, an evidentiary hearing may not be held unless (A) the claim relies on (1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, or there is (2) a factual predicate that could not have been previously

discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense. 28 U.S.C. §2254(e)(2) (1996).

Petitioner's claims rely on established rules of constitutional law. Further, petitioner has not set forth any factual basis for his claims that could not have been previously discovered by due diligence. Finally, the facts underlying petitioner's claims are insufficient to establish that no rational fact finder would have found him guilty of the crime. Therefore, petitioner is not entitled to an evidentiary hearing.

## **DISCUSSION**

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension. Engle v. Isaac, 456 U.S. 107 (1983). Section 2254 explicitly states that a federal court may entertain an application for writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the constitution or law or treaties of the United States." 28 U.S.C. § 2254(a)(1995). The Supreme Court has stated many times that federal habeas corpus relief does not lie for mere errors of state law. Estelle v. McGuire, 502 U.S. 62 (1991); Lewis v. Jeffers, 497 U.S. 764 (1990); Pulley v. Harris, 465 U.S. 37, 41 (1984).

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. §2254(d). Further, a determination of a factual issue by a state court shall be presumed correct, and the applicant has

the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

Respondent presents the following arguments:

1. The court lacks subject matter jurisdiction because the petitioner has failed to name a proper respondent.

2. Petitioner's first claim is unexhausted, and even if it were exhausted review is barred under the doctrine set forth in Stone v Powell, 428 U.S. 465 (1976).

3. Petitioner's second claim is without merit as the holding of the state courts was not contrary to or an unreasonable application of clearly established federal law.

(Dkt. # 12, pages 6 to 20).

A. *Personal Jurisdiction.*

Petitioner did not name a person as the respondent. Instead, he names the Washington State Department of Corrections. 28 U.S.C. § 2243 indicates that writs are to be directed "to the person having custody of the person detained." This person typically is the superintendent of the facility in which the petitioner is incarcerated. Failure to name the petitioner's custodian deprives federal courts of personal jurisdiction. Stanley v. California Supreme Court, 21 F.3d 359, 360 (9th Cir. 1994).

When respondent raised this issue they stated "[u]nless Neff amends his petition to name a proper Respondent, this Court lacks personal jurisdiction over the Respondent." (Dkt. # 12, page 9). Petitioner has not amended the petition to name a proper respondent. Instead, petitioner seeks leave of court to re-submit his appellate attorneys' briefs (Dkt. # 14).

The respondent is correct. Petitioner's failure to name the superintendent of the facility where he is housed deprives this court of personal jurisdiction. This petition should be dismissed without prejudice on this basis. The remainder of respondents' arguments will be addressed in the alternative.

2. *Exhaustion and a Fourth Amendment warrantless search claim.*

The Washington Supreme Court specifically stated "[w]hile Neff unsuccessfully moved to suppress the evidence in the garage at the Court of Appeals, that motion is not before us." State v. Neff, 163 Wn.2d 453, 181 P.3d 819 FN 1( 2008). Thus, petitioner never placed his first ground for relief, his claim regarding a warrantless search, before the Washington Supreme Court.

In order to satisfy the exhaustion requirement, petitioner's claim must have been fairly presented to the state's highest court. Picard v. Connor, 404 U.S. 270, 276 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir. 1985). A federal habeas petitioner must provide the state courts with a fair opportunity to correct alleged violations of prisoners' federal rights. Duncan v. Henry, 513 U.S.364 (1995). It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state law claim was made. Id, citing Picard v. Connor, 404 U.S. 270 (1971) and Anderson v. Harless, 459 U.S. 4 (1982). The first ground for review is unexhausted.

There is yet another reason why petitioner's claim of unreasonable search is not the proper subject of a habeas petition in this case. The Supreme Court holding in Stone v. Powell, 428 U.S. 465 (1976), provides that this court is precluded from considering petitioner's Fourth Amendment challenge to the search of his garage. The Court in Powell held that where a plaintiff has had a full and fair opportunity to litigate his Fourth Amendment issue in state court, the federal court is precluded from hearing the claim because the claim is not actually based on the Fourth Amendment but on the exclusionary rule. Powell, 428 U.S. at 486. The public policy behind exclusion of the evidence is furthered by allowing the argument to be raised and the rule applied in state court and on direct review, but the cost to society is too high when the rule is

applied on collateral review in federal court through a writ of habeas corpus. Powell, 428 U.S. at 493.

Here, Petitioner raised his argument at trial, in a suppression hearing, and at the Washington State Court of Appeals. He moved to suppress the evidence from the search of his garage. Petitioner did not raise this issue at the Washington Supreme Court. Even if he had, it would have not been a constitutional question, but rather a question regarding the proper application of the exclusionary rule. For all these reasons, the court should decline to review the first ground for relief.

3. *Sufficiency of the evidence for a gun enhancement.*

Petitioner argues that the evidence was not sufficient for a finding of guilt on the weapon enhancement. The Washington Supreme Court addressed this argument and held:

> Neff claims insufficient evidence supports his firearm enhancement. Since the trial court convicted Neff, we will affirm if sufficient evidence supports the conviction beyond a reasonable doubt, construing the facts in the State's favor. State v. DeVries, 149 Wn.2d 842, 849, 72 P.3d 748 (2003) (deferential standard when reviewing a bench trial). The dissent correctly points out that when the record only contains documents, we review without deference to the trial court. But the record here contains much more than affidavits and documents. The trial court judge also presided over the suppression hearing, where he took testimony. The judge considered testimony when deciding guilt and made an explicit finding that the officer's testimony was credible. Our review is deferential.
>
> A court may add time to a sentence if a defendant was armed with a firearm while committing a crime. RCW 9.94A.533(3). A person is armed while committing a crime if he can easily access and readily use a weapon and if a nexus connects him, the weapon, and the crime. State v. Schelin, 147 Wn.2d 562, 567-68, 55 P.3d 632 (2002); State v. Valdobinos, 122 Wn.2d 270, 282, 858 P.2d 199 (1993).
>
> This nexus requirement is critical because "[t]he right of the individual citizen to bear arms in defense of himself, or the State, shall not be impaired...." Wash. Const. art. I, § 24. The State may not punish a citizen merely for exercising this right. State v. Rupe, 101 Wn.2d 664, 704, 683 P.2d 571 (1984). The State may punish him for using a weapon in a commission of a crime, though, because a weapon can turn a nonviolent crime into a violent one, increasing the likelihood of death or injury. State v. Gurske, 155 Wn.2d 134, 138-39, 118 P.3d 333 (2005).

REPORT AND
RECOMMENDATION - 9

When a crime is a continuing crime--like a drug manufacturing operation--a nexus obtains if the weapon was "there to be used," which requires more than just the weapon's presence at the crime scene. Gurske, 155 Wn.2d at 138. This potential use may be offensive or defensive and may be to facilitate the crime's commission, to escape the scene, or to protect contraband. Id. at 139. In every case, whether a defendant is armed is a fact specific decision. Id.

Since the issue is fact specific, the facts and holdings of our prior cases are helpful. In State v. O'Neal, 159 Wn.2d 500, 503, 150 P.3d 1121 (2007), officers searched the defendants' methamphetamine laboratory. Besides evidence of drug manufacturing, the officers found over 20 guns, body armor, night vision goggles, and a police scanner. Id. A jury found the defendants guilty of manufacturing drugs and added a firearm enhancement. Id.

We affirmed the firearm enhancement. Id. at 502. Since the weapons were easily accessible to protect the drugs, and since the defendants kept a police scanner in the laboratory, the jury could find that the defendants used the guns to protect the drugs, and so we upheld their conviction. Id. at 504.

In State v. Eckenrode, 159 Wn.2d 488, 491, 150 P.3d 1116 (2007), the defendant called the police, alerting them to an intruder in his house. He told the dispatcher he was armed and ready to shoot the intruder. Id. When the police arrived, he was outside his home, sitting on his porch. Id. Police investigated and found he was growing marijuana and had two firearms in his house. Id. at 491-92. A jury convicted him of drug charges and gave a firearm enhancement. Id. at 492.

We affirmed his conviction and enhancement. Id. at 491. The defendant told the dispatcher he was armed. Id. at 494. Police found two weapons, one loaded, and a police scanner in the house. Id. Under those facts, a jury was allowed to infer that the defendant armed himself to protect his criminal enterprise and so was allowed to find him armed while committing the crimes. Id.

In Valdobinos, 122 Wn.2d at 273, by contrast, police arrested the defendant when he offered to sell cocaine to an undercover officer. They searched his house, finding cocaine and an unloaded rifle under his bed. Id. at 274, 282. A jury convicted him of drug charges and a firearm enhancement. Id. at 274.

We reversed the enhancement, holding the jury could not infer from an unloaded rifle near the cocaine that the defendant was armed. Id. at 282. Notably, however, no evidence indicated the gun was in the house to protect the drugs, as indicated by the presence of loaded weapons and police scanners in O'Neal and Eckenrode. See Id.

Here, the trial judge found that "[i]n the defendant's garage the Sheriff's department recovered ... a loaded Smith and Wesson .357 handgun, a Colt .45, [and] a Davis model P.380 firearm." CP at 163. He found Neff "was armed because the guns ... where [sic] readily available for offensive or defensive purposes." CP at 164.

On these findings, he held "[t]hat defendant was armed with a firearm while he was manufacturing methamphetamine." CP at 165.

Based on the record, a rational fact finder could agree. When they searched Neff's garage, police found two loaded pistols in a safe, which also contained four bags of marijuana. Neff held the keys to the garage. The police found a third pistol hanging from a tool belt in the garage's rafters. While it is unclear from the record whether Neff could easily reach the gun, we construe the fact in the State's favor. Finally, the officers found two security cameras and a monitor in the garage on which to view live feeds. An officer testified that the monitors were for countersurveillance.

These facts, together with all inferences favoring the State, are enough for a rational person to find beyond a reasonable doubt that Neff was armed. Neff correctly points out "there must be some proof actually linking the gun to the crime of manufacturing, more than just by mere presence and the defendant's constructive possession." Pet'r Suppl. Br. at 11. Additional proof here is provided by the security cameras and video monitor. As in O'Neal, the trial judge was allowed to infer from the additional equipment-the police scanner in O'Neal and the security cameras here- that Neff used the guns to protect his drug operation. 159 Wn.2d at 503.

Neff contends there is no evidence or finding that he was in the garage with the guns when Deputy Jones arrived, and so he could not have been armed. But we held in O'Neal, 159 Wn.2d at 504, that "[t]he defendant does not have to be armed at the moment of arrest to be armed for purposes of the firearms enhancement." The dissent takes issue with this holding, but O'Neal stated the rule just last year, and we have no reason to overturn it. Neff's drug operation was a continuing crime. Manufacturing is unlike, say, robbery, which happens once. The manufacturing operation is a crime, even if the defendant is elsewhere when the police arrive. Moreover, even the dissent agrees that sufficient evidence supports Neff's manufacturing conviction, even though he was not manufacturing when the police arrived. Sufficient evidence supports the finding that Neff had manufactured methamphetamine in the past and did so with guns at hand and countersurveillance cameras watching for approaching cars.

The dissent asks "what better place [to keep a gun] than locked in a safe or out of reach on a high rafter?" Dissent at 830. There are lawful places to keep guns other than in a methamphetamine lab equipped with countersurveillance cameras watching for police or intruders. It is clear from the record that Neff armed himself and equipped his lab for the purpose of defending his drug operation. Under O'Neal and Eckenrode, this is enough to convict him of being armed while manufacturing drugs.

The State may not punish Neff for owning guns, for keeping them loaded, or for keeping them easily accessible. However, it could enhance his drug manufacturing sentence where it proved beyond a reasonable doubt that Neff used them to defend his drug operation. Given the record, a rational fact finder could have so found, and so we affirm the enhancement.

State v. Neff, 163 Wn.2d at 461-65.

Respondent argues, and this court agrees, that the State court holding is not an unreasonable application of clearly established federal law. The Washington Supreme Court identified the applicable law and properly applied that law to the facts before it. Since the state court determination on this issue is presumed to be correct, and the petitioner has failed to rebut the presumption of correctness by clear and convincing evidence, this court should decline to review this second ground for relief.

## CONCLUSION

The court lacks personal jurisdiction over the respondent.

In the alternative, the petition is without merit and should be denied for the reasons stated in the Report and Recommendation.

Therefore, it is this court's recommendation that the Petition be DENIED and that the case be DISMISSED WITHOUT PREJUDICE.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on July 31, 2009, as noted in the caption.

DATED this 29th day of June, 2009.

J. Richard Creatura
United States Magistrate Judge

REPORT AND
RECOMMENDATION - 12